UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>f/u/b/o PRIME STEEL ERECTING,<br>INC.,<br>    Plaintiff, | )<br>)<br>)<br>)<br>) | |
| v. | ) | C.A. No. 13-CV-11920-MLW |
| | ) | |
| WILLIAMS BUILDING COMPANY,<br>INC.,<br>and<br>INTERNATIONAL FIDELITY<br>INSURANCE COMPANY,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                        September 29, 2015


On August 9, 2013, Prime Steel Erecting, Inc. ("Prime") filed
a complaint against the Williams Building Company, Inc.
("Williams") and International Fidelity Insurance Company
("IFIC"). Prime alleged that Williams and IFIC owed Prime payment
for work on a federal construction project. On October 4, 2013,
Williams filed its first motion to stay the proceedings pending
mediation and arbitration. Williams also filed a third-party
complaint against two subcontractors, Vanasse Hangen Brustlin,
Inc. ("VHB") and Unistress Corporation ("Unistress") related to
the same construction project. The parties have since filed many
counterclaims and crossclaims. On April 10, 2014, Prime stipulated
to dismissal of its original complaint. However, Williams's third-
party complaint, the counterclaims and crossclaims concerning it,

and Unistress's fourth-party complaint against IFIC remain pending.

On April 25, 2014, Williams moved either to dismiss for lack of subject matter jurisdiction or to stay the litigation pending arbitration. For the reasons explained below, Williams's motion to stay pending arbitration is being allowed. Williams's motion to dismiss for lack of subject matter jurisdiction is being denied without prejudice subject to possible refiling after arbitration.

I.   BACKGROUND

     A.   Factual Allegations

The undisputed facts include the following. This case arises out of a federal construction project in the Jamaica Plain neighborhood of Boston, Massachusetts. In 2011, the federal government hired Williams as the prime contractor for the construction of a parking garage. Williams contracted with two relevant subcontractors, VHB and Unistress. Unistress subcontracted with Prime. IFIC provided surety bonds on behalf of Williams as required by federal law. The project ran behind schedule and over budget, leading to disputes among the parties.

In its third-party complaint, Williams alleged the following. Williams hired VHB to "perform layout services for the project," but VHB "failed to properly perform its surveying duties, resulting in the foundation for the new garage being located closer to the

2

existing garage" than had been specified in project plans.  Docket
No. 17 at ¶¶16-17.  In its answer, VHB denied these allegations.
Docket No. 24 at ¶¶16-17.

Williams further alleged that its contract with Unistress
required Unistress to "perform measurements at the Project site
. . . before fabricating the precast concrete panels," but
Unistress did not perform these measurements.  Docket No. 17 at
¶¶31-32.  After learning that the foundation had been laid closer
to the old garage than planned, Unistress failed to "modify the
panels in its shop prior to transporting them to the Project site."
Id. at ¶¶33-35.  As a result, Unistress "engaged Prime to perform
additional services for which it, Unistress, has failed and refused
to pay Prime."  Id. ¶36.  In its answer, Unistress "admits that it
was informed at some point that the foundation for the new garage
was located closer to the existing garage" than planned, but denied
the other allegations.  Docket No. 34 at ¶¶31-36.

In its complaint, Prime alleged the following.  Prime,
pursuant to its contract, installed concrete precast components
and steel at the job site.  Docket No. 1 at ¶8.  Prime also
performed "Extra & Corrective Work" including "making jobsite
adjustments to material and site preparations provided by Williams
and/or Unistress," as well as "many other fixes, repairs, and field
adjustments."  Id. at ¶10.  This additional work was not in the

3

original contract, but Williams and Unistress requested that Prime perform this work. Id. at ¶¶11-12. Prime was not compensated either for its contracted-for work or for the additional work, and its complaint sought $171,328.82 plus attorneys' fees and costs. Id. at ¶¶ 9, 20, 22-24. In its answer, Williams denied these allegations to the extent that they "deviate from the terms of the written contract." Docket No. 12 at ¶¶ 8-12.

    B.    Procedural History

    Williams's contracts with both Unistress and Vanasse provided for mandatory mediation followed, if necessary, by arbitration. See Williams-Unistress Contract, Docket No. 46-1 at §§6.1-6.2; Williams-VHB Contract, Docket No. 46-2 at §§9.4-9.5. On February 20, 2013, Unistress demanded mediation. The parties attended mediation, but the claims remained unresolved.

    On September 9, 2013, Prime initiated litigation against Williams and IFIC, seeking $171,328.82 plus attorneys' fees and costs. This litigation was brought under the Miller Act, which applies to federal public works projects. See 40 U.S.C. §3131. The Miller Act provides that federal public works contractors must furnish a payment bond for the "protection of all persons supplying labor and material in carrying out the work provided for in the contract." Id. §3131(b)(2). The Miller Act authorizes "[e]very person that has furnished labor or material in carrying out work

4

provided for in a contract for which a payment bond is furnished under section 3131" to "bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought." Id. §3133(b)(1); see also id. §3133(b)(2) (authorizing suits against a contractor by person having direct contractual relationship with only a subcontractor).

On September 20, 2013, Williams filed an answer, asserting, among other affirmative defenses, that Prime had failed to pursue mediation prior to initiating litigation. Docket No. 12 at 5.

On October 4, 2013, Williams moved to stay the litigation pending mediation. Docket No. 14. Prime opposed the motion to stay. Docket No. 20 at 1. Prime argued that it was not bound by the arbitration clause in Williams's contract with Unistress, id. at 2-5, and that its Miller Act bond claims could proceed prior to an arbitrator's finding of fault, id. at 5-7.

On October 4, 2013--the same day as its motion to stay-- Williams filed a third-party complaint against Unistress and VHB. Docket No. 17. On March 20, 2014, Unistress filed an answer to Williams's third-party complaint. Docket No. 34.

On November 26, 2013, the four parties participated in mediation. Docket No. 45 at 5. During mediation, they settled some, but not all, of the claims. Id. Among other terms, the settlement provided for the dismissal of pending claims and the

resolution of outstanding claims in arbitration. Prime, Unistress, and Williams, but not VHB, signed a memorandum of understanding on November 26, 2013, agreeing that the parties would execute a formal agreement by March 20, 2014. Docket No. 45 at 5.

On December 6, 2013, VHB answered Williams's third-party complaint. Docket No. 24. VHB's answer asserted crossclaims against Unistress and counterclaims against Williams. Id. On February 24, 2014, Williams replied to VHB's counterclaims. Williams asserted, among other defenses, that the action should be dismissed pursuant to the arbitration clause in the parties' contract. Docket No. 31 at 6. Unistress filed an answer to VHB's crossclaims on March 20, 2014. Docket No. 35.

On March 20, 2014, Unistress answered Williams's third-party complaint. Docket No. 34. Unistress's answer asserted crossclaims against VHB and IFIC, and counterclaims against Williams. Docket No. 34. On April 11, 2014, Williams filed an assented-to motion to enlarge time for responding to Unistress's counterclaim. Docket No. 41. That motion was allowed. Docket No. 42. IFIC answered Unistress's crossclaim on April 21, 2014. Docket No. 45 at 7.

On March 24, 2014, Unistress filed a fourth-party complaint against IFIC, seeking $442,629.30 plus attorneys' fees and costs under the Miller Act. Docket No. 38.

6

On April 10, 2014, Prime, Williams, and IFIC filed a stipulation of dismissal of all claims by and between those parties. Docket No. 40. On April 25, 2014, Williams moved to dismiss or stay on two alternative grounds. Docket No. 44.

First, Williams argued that subject matter jurisdiction over this litigation was predicated on the Miller Act claim in Prime's initial complaint. Docket No. 45 at 7-9. With the dismissal of that complaint, Williams argued, this court no longer had supplemental jurisdiction over the other claims, which it described as "garden-variety state law claims." Id. at 7.

Unistress opposed the motion to dismiss, arguing that the court still has jurisdiction because two claims continue to present federal questions. First, Unistress's March 20, 2014 answer to the Williams third-party complaint asserted a crossclaim under the Miller Act against IFIC. Docket No. 34. Second, Unistress's fourth-party complaint against IFIC asserted Miller Act claims. Docket No. 38. VHB made similar arguments. Docket No. 50 at 5. Williams argued that the fourth-party complaint was filed four days after the Prime complaint was dismissed, and that jurisdiction ended with that dismissal. Docket No. 45 at 8-9.

Second, Williams moved to dismiss or stay the litigation pending arbitration. Docket No. 45 at 9-11. Williams argued that the Unistress and VHB contracts contain binding arbitration

clauses, that Williams had consistently pursued arbitration, and that Williams made filings in this litigation only when necessary to avoid default or to preserve claims. Id. at 9-10. Further, Williams sought a stay of litigation pending arbitration at the outset and invoked the contractual arbitration right in its filings. Id. at 10-11.

Unistress and VHB argued that Williams waived its right to arbitrate by filing its third-party complaint against Unistress and VHB and otherwise availing itself of the litigation process. Docket No. 49 at 6-7; Docket No. 50 at 4. In its reply, Williams emphasized that it "acted promptly by moving to stay this matter last October [2013] at the outset of litigation, pending the outcome of initial mediation and potentially subsequent arbitration." Docket No. 53 at 2. Williams further argued that the machinery of litigation has not been substantially invoked: there had been no Rule 26 disclosures or discovery, and there had been no Rule 16 conference. Id. at 2.

On July 28, 2015, Unistress requested a Rule 16 conference. Docket No. 55. VHB assented to this motion. Id. Williams opposed the motion, pointing to its pending Motion to Dismiss and/or Stay Proceedings Pending Arbitration, and asserting Unistress's "contractual obligation to arbitrate." Docket No. 56.

II.   MOTION TO STAY PENDING ARBITRATION

As discussed earlier, Williams has twice moved to stay this litigation pending arbitration.   Williams's original motion to stay related to a complaint that has since been dismissed. Williams's more recent motion to stay applies to the parties and claims that remain pending.   Accordingly, the first motion is moot. As to Williams's second motion to stay, Unistress and VHB argue that Williams has waived its right to arbitration.   This claim is not correct.

A.   The Applicable Standard

"Although a party may waive a right to arbitrate--either explicitly or through its conduct--we resolve any doubts in favor of arbitration."   FPE Found. v. Cohen, -- F. 3d --, 2015 WL 5138182, at *2 (1st Cir. Sept. 2, 2015).   An analysis of whether a conduct-based waiver has occurred must "start with the strong federal policy favoring arbitration agreements."   Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 948 (1st Cir. 2014).

Courts weighing waiver-of-arbitration arguments "ask whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice."   Id.   "[T]here is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts."   Id. at 951 (quoting Tyco Int'l Ltd. v.

9

Swartz, 422 F.3d 41, 46 (1st Cir. 2005)).   However, the First

Circuit has articulated a six-factor test to guide this fact-

intensive analysis:

> (1) whether the parties participated in a lawsuit or
> took other action inconsistent with arbitration;
>
> (2) whether the "litigation machinery has been
> substantially invoked and the parties [are] well into
> preparation of a lawsuit by the time an intention to
> arbitrate [is] communicated";
>
> (3) "whether there has been a long delay" and trial is
> near at hand;
>
> (4) whether the party seeking to compel arbitration has
> "invoked the jurisdiction of the court by filing a
> counterclaim";
>
> (5) whether discovery not available in arbitration has
> occurred; and
>
> (6) whether the party asserting waiver has suffered
> prejudice.

FPE Foundation, 2015 WL 5138182, at *2 (line breaks added)

(bracketed alterations in original) (quoting Restoration

Preservation Masonry v. Grover Eur., Ltd., 325 F.3d 54, 60-61 (1st

Cir. 2003) (citations omitted)).[1]

_____

[1] In the past year, the First Circuit has articulated two different
multi-factor tests for conduct-based waivers of arbitration.   In
September 2015, Chief Judge Howard, Justice Souter, and Judge Lipez
outlined the test quoted above and applied below.   See FPE
Foundation, 2015 WL 5138182, at *2. In December 2014, Judge Selya,
then-Chief Judge Lynch, and Judge Kayatta employed a five-factor
test.   See Joca-Roca Real Estate, 772 F.3d at 948.   Both cases
draw on the factors articulated in the 2003 case Restoration

Of these factors, "prejudice is essential for a waiver." Joca-Roca Real Estate, 772 F.3d at 948. "The party advocating waiver has the burden of demonstrating prejudice." Id.

B.  Analysis

Analysis of the six relevant factors persuaded the court that Williams has not waived its contractual rights to arbitration.

Williams has participated in this litigation. However, it did not initiate the litigation. Its filings have been consistent with a party that is seeking arbitration and participating in litigation only to avoid a default judgment or the loss of rights to file claims as of right. Williams's answer to Prime's complaint, which was filed after obtaining the court's leave for a delay to pursue mediation, Docket No. 5 at 1, asserted arbitration as an affirmative defense, Docket No. 10 at 5.

Williams's third-party claims against Unistress and VHB did "invoke[] the jurisdiction of the court," In re Citigroup, 376 F.3d at 26, which would support a conclusion that it participated in litigation. The third-party complaint made no reference to Williams's arbitral rights, Docket No. 17, arguably suggesting an "intent to forgo arbitration and resolve the disputed matter through litigation." Joca-Roca Real Estate, 772 F.3d at 949.

_____
Preservation Masonry, 325 F.3d at 60-61. The court would reach the same decision under either test.

11

However, if Williams had not filed those complaints within fourteen days of serving its answer, it would have been required to seek leave of the court to pursue them. See Fed. R. Civ. P. 14(a)(1). This suggests that Williams's filing was an attempt to preserve claims, not an indication of intent to forego arbitration.

The litigation machinery has not been substantially invoked. This factor addresses the risk that parties will "take advantage of judicial resources such as depositions and case management conferences." In re Citibank, 376 F.3d at 28. This litigation is in its early stages. Parties have filed claims, but there has not been a scheduling conference and no discovery has been conducted. The machinery of litigation, therefore, has not been invoked to an extent consistent with waiver of arbitral rights. See Joca-Roca Real Estate, 772 F.3d at 949 (arbitral rights waived where "[o]ver a period of more than eight months, the parties engaged actively in discovery"); In re Citigroup, Inc., 376 F.3d at 28 (arbitral rights waived where "defendant [] failed to timely invoke its rights, and during that delay, the litigation [] proceeded into discovery"); Rankin, 336 F.3d at 13 (arbitral rights waived where party "wait[ed] until after discovery had closed" to assert arbitral rights).

There has not been a long delay, and trial is not imminent. After Prime filed its complaint on August 9, 2013, Williams

12

promptly asserted its arbitral rights in three submissions. First but least significantly, twenty-eight days after the complaint, Williams filed an assented-to motion to enlarge time for responsive pleading, noting that "the parties are attempting to schedule a mediation so as to resolve this dispute[.]"  Docket No. 5 at 1. Forty-two days after the complaint, Williams's answer asserted its arbitration rights as an affirmative defense.  Docket No. 10 at 5. Fifty-six days after the complaint, Williams moved for a stay pending arbitration.  The First Circuit has held that the motion to stay is the relevant filing to consider in evaluating the length of time a party took to assert its arbitral rights.  See In re Citigroup, Inc., 376 F.3d 23, 27 (1st Cir. 2004).

The motion to stay, filed 56 days after the complaint, is within the range that courts have found is proper for the assertion of arbitral rights.  See, e.g., Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 33 (1st Cir. 2001) (no waiver where the defendant filed motion to stay pending arbitration five months after plaintiff filed complaint).  Courts have generally found waiver only after much longer delays in the assertion of arbitral rights.  In re Citigroup, 376 F.3d at 27 (three-year delay); Rankin v. Allstate Ins. Co., 336 F.3d 8, 14 (1st Cir. 2003) (nine-month delay); Restoration Preservation Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 54, 60 (1st Cir. 2003) (four-year delay); Menorah

13

Ins. Co., Ltd. V. INX Reinsurance Corp., 72 F.3d 218, 222 (1st Cir. 1995) (sixteen-month delay).

In Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp., 120 F.3d 304, 315-16 (1st Cir. 1997), a one month delay was found to justify a waiver, but due to an expedited trial schedule the motion was filed only one day before trial. See also Rankin, 336 F.3d at 14 (arbitral rights waived where party asserted arbitral rights "only six weeks before a long-scheduled trial"). In the instant case, a trial date has not been set.

Williams, the party seeking to compel arbitration, has not invoked the jurisdiction of the court by filing a counterclaim against Prime in response to the initial complaint. As discussed previously, Williams did invoke the jurisdiction of the court by filing a third-party complaint, but evidently did so to assure it could pursue that claim in litigation if its motion for a stay pending arbitration was denied.

Discovery not available in arbitration has not occurred. As discussed earlier, this litigation is in its early stages. No discovery has occurred.

Unistress and VHB, the parties asserting waiver, have suffered some prejudice, but it is not substantial. As a result of Williams's third-party complaints, Unistress has incurred fees of "approximately $8,000." Docket No. 49 at 8. While VHB has not

14

provided an estimate of costs, it has made submissions similar to Unistress. However, a showing of litigation costs alone is sufficient only where the party seeking arbitration had engaged in "a deliberate strategy unilaterally designed to delay the arbitration proceedings." Tyco Int'l Ltd., 422 F.3d at 46. Here, there is no evidence that Williams's participation in litigation was part of a strategy to deliberately delay arbitration. Rather, Williams has consistently asserted its arbitral rights and promptly moved to stay the litigation pending arbitration, after Unistress's subcontractor Prime initiated this litigation.

Here, Unistress and VHB have not been prejudiced by having to prepare for trial or participate in the rigors of discovery, and Williams has not benefitted from obtaining any discovery that would not be available in arbitration. See Joca-Roca Real Estate, 772 F.3d at 951 (finding prejudice as a result of eight-month discovery process because it was "highly improbable that the discovery undertaken here would have occurred in arbitration"). While Unistress and VHB have had to make submissions concerning the legal issues in this case, similar work would likely have been necessary for the mediation and arbitration.

Therefore, while Unistress and VHB have experienced some prejudice as a result of the litigation to date, the procedural posture of this case--with the litigation having been initiated by

a   subcontractor   of   one   of   the   now-prejudiced   parties
--and the minor nature of the prejudice, weighs against finding
this prejudice sufficient to establish waiver of arbitral rights.

Having considered and balanced the relevant factors, the
court finds that Williams has not waived its arbitral rights.  The
motion to stay pending arbitration is, therefore, meritorious, and
is being allowed.

III. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Williams has also moved to dismiss for lack of subject matter
jurisdiction.  This motion is being denied without prejudice.  If
the  parties  return  to  litigation  after  the  conclusion  of
arbitration, Williams may again present these arguments in light
of the claims then pending before the court.

IV.   ORDER

For the foregoing reasons, it is hereby ORDERED that:

1.   In light of Prime's dismissal of its August 9, 2013
complaint, Williams's October 4, 2013 Motion to Stay Pending
Mediation and Arbitration (Docket No. 14) is MOOT.

2.   Williams's April 25, 2014 Motion to Dismiss and/or Stay
Proceedings Pending Arbitration (Docket No. 44) is ALLOWED in part.
Specifically, the motion to stay pending arbitration is ALLOWED
and this case is STAYED.  Williams's motion to dismiss for lack of
subject matter jurisdiction is DENIED without prejudice.

3.    The parties shall, within thirty days of the conclusion of the arbitration, report whether this case should be dismissed and, if not, propose a schedule for resolving the issue(s) to be litigated.

4.    Unistress's Motion for Rule 16 Conference (Docket No. 55) is MOOT.

                                    UNITED STATES DISTRICT JUDGE

17